Our first case of the day, United States v. Joseph. Good morning, Your Honors, and may it please the Court, Keith Donohue for Appellant Akeem Joseph. If I may, I'd like to reserve three minutes of my time for rebuttal. It's granted. Thank you. Your Honors, this is a case about the probable cause standard. And it asks whether that standard permits a person to be arrested on the spot for trying to pay with money that looks and feels perfectly real, but turns out to be counterfeit. Well, from my standpoint, this case is about waiver. And of course, I'm speaking only for myself at this point. But to begin, I assume that you would concede that the factual basis for your argument at this time on appeal is different from the factual basis of the issue you raised in the District Court. I wouldn't concede the factual basis is different, Your Honor. The probable cause inquiry is always an inquiry into the totality of circumstances. So they have always been an issue here. But you're arguing to us at this time that the officers had to have some knowledge looking at the totality as to the intent or state of mind of Mr. Joseph. Correct? Yes. That's mens rea. And that would involve certain facts. For instance, if you deduce evidence that he ran or deduce other evidence. But when you were before the District Court, first the argument was terry stock, whether there was cause for a terry stock. And then the argument was whether the individuals and the officers specifically could reasonably believe that the bills were indeed counterfeit. Now that factual basis, as Judge Smith mentions, is totally different from the factual, the facts that would have to be adduced with respect to state of mind or intent, is it not? Well, let me talk about the facts, Your Honor. The single. So I guess you don't want to answer the question that's been posed twice about the difference between the facts that have been. Well, I would agree with Judge Randell that the argument in the District Court at the close of the suppression hearing was that there was reason to doubt the officers could really tell the bill was fake. That was the only. At the District Court, what you were arguing were facts that went to actus reis as opposed to what you now argue, which is an issue involving facts involving mens rea, right? Yes, we argued actus reis at the end of the suppression hearing and now we're arguing mens rea. That's accurate, Your Honor. That's a pretty substantial difference. When we placed that argument before the District Court, the District Court did not understand it to be an argument exclusively about the actus reis and you can see that from the analysis she sets forth in her opinion. She identifies prominently the single fact that bears on intent in any respect whatsoever, and that was that there was a passport that had a torn photograph. She gives that fact just as much attention in her opinion as she gives the facts that as the officer's expertise. But she did it in the context of what was the thoughts and the knowledge and the understanding of the officers regarding the counterfeit nature, not regarding the state of mind. Tell me where in her opinion which is very thorough, she refers at all to this element and any allegation that there's anything lacking with respect to the state of mind. She doesn't refer to any elements, Your Honor. She did exactly what she's supposed to do. She made me think of factual error, but she did exactly what she's supposed to do, which is she looked at the totality of the circumstances and she cited both the facts that went to the actus reis and the facts that went to mens rea. Where did you alert the District Court that it was your position that she had to find that the officers concluded that he had the state of mind, the knowing state of mind with respect to the counterfeit nature? Where did you alert her to that? We did not specifically raise that point. Don't you think that she would have addressed it then rather than this broad totality of the circumstances suggestion you're making here if in fact you had specifically raised it? Well, Your Honor, I think that under the precedent of this Court and specifically the decision of Wright v. City of Philadelphia, it was incumbent on her to address what facts went to mens rea because Wright says that any probable cause determination requires an examination of the elements of the crime at issue. That is the law of this circuit. The District Court realized that and it was natural for the District Court to realize that because it's a fundamental proposition of our criminal law that there can't be probable cause to believe someone has committed a crime unless there's both the act and the mental state. But the probable cause that you focused on, that was focused on in the District Court, had to do with knowledge and understanding expertise of the officers. That's how it was teed up and that's how the record and the argument with the District Court goes. And indeed your adversary responds just to that point on probable cause. So how was anyone on notice that this was an overall challenge to the probable cause for each and every element? They were only on notice under the precedent of this Court, not by anything we said in the District Court, Your Honor. That's correct. But Wright actually says, and I'm quoting, probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. I mean, Wright specifically says that. I don't know that we say that in probable cause that a District Court judge, in fact, I think it would be pretty strong medicine from us if we said in probable cause a District Court judge had to look at every element of the crime and make sure that there was probable cause with respect to that. The entire theory of and purpose behind our adversarial system as it applies to issues is that we I mean, you just don't throw something at a court and say resolve it. The role of an advocate and the role of advocates in an adversarial system are to address as specifically as possible points. And you're not doing that here. And in fact, it seems to me that your reliance, and it's not in the blue brief, you don't raise it until the reply brief, but United States v. Dupree, which is a precedent of this Court that is a basis of your suggestion, as I understand it, that because probable cause for arrest was challenged on one basis, then other bases as to the absence of probable cause have been preserved. That's my understanding of your argument, and in my view, that can't be right. Well, let me take those questions in turn, and I'll return to your reading of Wright in just a moment, Judge Rendell. We are not relying on Dupree for our waiver argument in any respect whatsoever, Your Honor. So to put forward what we say about Dupree, arguably the case has no precedential force, but we don't quarrel with the government's interpretation of Dupree as having held We don't quarrel with the government's interpretation of Dupree as having held that the government did not waive the issue in that case. Now, that's a notable aspect of Dupree, because in that case, the government had conceded, it had expressly conceded in the District Court that if there had been an unlawful stop, then the evidence was subject to the exclusionary rule. On appeal, it concedes that there was an unlawful stop, and it says the exclusionary rule didn't apply. But Dupree is a very different case. There was a focus there on exactly what was happening at a point in time, and whether someone was held, or it was a very focused, at exactly the same point, the arguments were somewhat different. But that's very different from the total change in focus that we have here, is it not? Yes, every waiver case is different, because waiver determinations are factually intensive. I can't resist just one mind, the main difference between Dupree and this case is that the government expressly conceded in the District Court the argument it raised on appeal. We certainly did nothing like that. We made one argument about why there wasn't probable cause, and in no respect whatsoever did we suggest that was our only point, that if we were wrong about that argument, then probable cause did exist. But then how is anyone on notice, whether it's the court or your adversary, how to respond to the position presented on the motion before the court, if that's your view? Well, we brought one up. That kept everything in play. Shame on everybody else for not catching it. Your Honor, our position is that once a party challenges the absence of probable cause, which no one disputes we did, under Right v. City of Philadelphia, the precedent of this court makes clear that examining probable cause requires an examination of the elements of the crime at issue. And I believe that that would be necessary regardless of whether Right had crystallized it for us as it has. Judge Rendell was speaking about Right before. Judge, I don't think the decision can be read any differently than I'm reading it. In Right, the offense was criminal trespass. There was no dispute that the suspect had broken into someone else's home. So if it was enough for apps to support a probable cause determination, there would have been no issue. But instead, this court analyzed at length what facts were known to officers about whether the suspect knew she wasn't allowed to break into the home. But Right's not a waiver case. Right's not a waiver case. And that really makes all the difference. What about Lockett? I mean, doesn't Lockett use language that's substantially the same? Yes, we think that is the... You think what you've raised is substantially the same? I think it's substantially the same language. That's a broad standard. And so what it asks the court to do is to look at the policy considerations at stake. Judge Schwartz, you asked about how any party should know. The record here affirmatively demonstrates that the government put on all evidence it has of what officers knew at the time of the arrest. And that's clear from the testimony of Agent Taylor, which we set forth at page 2 and pages 17 through 18 of our reply brief. There cannot be any dispute that the government has no other evidence of what police knew. So that purpose of the waiver rule is satisfied here. What about the court, though? How would the judge know that you were making a challenge to the officer's factual basis for why they came to a conclusion about the defendant's knowledge as compared to the officer's knowledge or expertise? They're two different subjects. I suppose the leading, the most dramatic sign that the court knew is that it ruled on it. And if we look at Judge Fisher's opinion on Dupree, what really mattered... It ruled on a very general proposition, but discussed the expertise of the officer's experience, but it didn't make a specific finding. It did a general finding that was probable cause, correct? If the court had only been concerned to address whether the officers had expertise to identify the bills, there would have been no reason for it to prominently remark upon the torn passport. The only significance the torn passport could have would be that it might indicate some consciousness of guilt. That is the only significance that fact could have. So the district court in paying attention to that fact did contemplate the necessity of addressing mens rea. And notably, Your Honors, the government itself never argued that the passport supported probable cause. The court reached out to find that, because the court was sensitive to the need for some evidence. Well, it showed that these officers had looked at things of this kind before and knew what they were looking for and knew how to spot it, but it really doesn't reflect on the intent or knowledge. I mean, who knows where he got his passport? Who knows if he knew it was fake or fraudulent? There's testimony at trial of Mr. Glenn to the effect that he had indeed ran up a whole flight of stairs and he was holding him by the collar when he was waving to the police. Now, don't you think that kind of evidence, if there had been an issue as to whether Mr. Joseph was just a very innocent person who had no knowledge that these bills were counterfeit, don't you think that the government would have wanted to adduce evidence as to his fact that he ran, the fact that there was some knowledge on his part? Well, I think the government didn't induce evidence on that because security guard Glenn was not testifying accurately in that regard. Officer Umbrell testified that when she approached Mr. Joseph was standing alongside. She never saw any kind of struggle between the bouncer and Mr. Joseph. Well, there wasn't a specific answer or question about any struggle or anything, because that wasn't raised. But she described where Mr. Joseph was from the moment she looked at the scene. Yeah, but nobody ever said, you know, when you came over, why did you come, what did you observe the two of them doing? There is testimony on that subject, and she testifies that a bouncer flagged her over, so she did see the bouncer, but rather than describe the bouncer as having been holding Mr. Joseph. Yeah, because there was no need to because there wasn't any it wasn't, the issue wasn't raised. Your Honor, she did state that Mr. Joseph was standing alongside. She stated, I mean, she couldn't have changed her testimony if we had been making a different argument. She testified truthfully about what the facts were. Okay. All right, we'll hear from you on rebuttal. Thank you. Good morning. Mary Kay Costello for the United States, the appellee in this matter. Your Honor, in your questioning of Mr. Donahue, I believe that the Court has this issue right. The defendant keeps changing his theory. At every chance, he changes his theory until, I guess, until he finds something that's finally going to work. At the suppression, in his suppression briefing, he argued one theory about the search. When we got to the hearing, he argued another theory about probable cause, and Your Honor, you're right. The issue was, did the officers have expertise enough to identify counterfeit currency? So we need to either decide that there was no waiver in order for him to succeed, or find that notwithstanding his changing of position, which I think we've called jumping like the buzzing bee, that there's plain error here if a district court does not, in the probable cause determination, address and determine whether there's probable cause as to every element, as he says we said in Wright. Well, I think that that's not what Wright says to begin with, but no. The district court is not required to anticipate every single ground that a defendant could have raised but didn't raise, even if it just goes to probable cause. I mean, probable cause alone, there could have been any number of issues or ways that they could have challenged probable cause. The district court isn't required to anticipate all of that. And the only way to allow a district court to focus rather than have to anticipate is to require within this regime a degree of specificity in the issues or arguments that are raised. Would you agree? Oh, absolutely, Your Honor. Counsel were both asked to address whether or not there was some tension between our Dupree precedent and our Tracy precedent. The government's response seemed to suggest a belief that there is no such tension. Should it be enough, as Dupree suggests, that a party simply raise an argument within a certain legal framework to preserve that argument? Is that sufficient? Because that seems to me to be what was suggested in Dupree, at least in Judge Fischer's concurrence, which your adversary invoked briefly a few minutes ago, and where Judge Fischer, in a case where, of course, we've got three different opinions, so I'm not sure what we make of any of it, but he referred to the overarching question. Now, if we're talking about overarching questions, we're not really talking about specificity, are we? That's correct, Your Honor, but I think that Dupree is very different from the situation here. Every case can be distinguished, but we're left with a certain number of cases within the Third Circuit that do not exactly provide what might be referred to as either a case for considering what is substantially the same. Would you agree? Well, I think that in cases like this where it is fact-specific, all we can do is look at the facts of each case and then analogize. In Dupree, it's important to notice that in Dupree, in the district court and in appeal, the government had cited the exact same case. In fact, it had cited the exact same sentence and relied on that sentence for both arguments. So Dupree, unlike this case, is not a case where the new argument relied on new factual circumstances or a completely new legal theory. I'm not arguing the facts or the procedural specifics of Dupree. I'm arguing, I'm asking about the language of the opinion and the language of our other opinion in Tracy, because it is from that language that we've got to try to harmonize those what level of specificity ought to be called for. Well, I think that the other cases, Marks, Rose, Tracy, all of those cases involve situations where the issue was not raised at all. That's exactly like this case here. Whereas Dupree, the issue was raised, the court was caught on notice, and both the concurring opinion and the dissenting opinion noted that Dupree was not a case in which the district court was expected to anticipate an argument that was never raised. Would a proper test be, and I'm reminded of Judge Fisher's statement to the effect that that was not a situation where you would have expected some facts, additional facts to be adduced had the argument been made. Would that be the test that we should use? Would that be the standard? Where, for instance, some additional facts would have been presented by the government had the issue been raised before the district court. Is that a workable test or standard for us to apply? I think it would be part of the standard, but I don't think it would be the entire standard, because the facts are one part. That is one factor, and it is a factor here, Your Honor. You're exactly right. But it's also the law. It's the theory, and it would be the facts that go with that theory. Well, the theory is lack of probable cause. To have probable cause, the officers have to have cause to believe that a crime has been committed. Crimes only have been committed if every element is present. But that's not the law, Your Honor. That's not how probable cause is determined. Probable cause is based on the totality of the circumstances as judged by reasonable men making decisions on a minute-by-minute basis, not legal technicians. If that were what the waiver rule says, if that's how to apply the facts, Tracy and Rose would have been decided very differently, because that argument is that, well, look, if I raise probable cause on a particular theory at the district court, then every possible theory regarding probable cause that I could have raised would be deemed to have been raised. Exactly. Isn't that an example of an overarching question? But that's not the waiver rule. That would make the waiver rule completely meaningless, Your Honor. I'm not suggesting otherwise, but I'm saying isn't that an example of an overarching question? I've raised probable cause. Yes, Your Honor, but what that's doing is expecting the district court to anticipate all the possible grounds that could go with probable cause. You're missing my point. I'm trying to get to a test. I'm trying to reach some refinement of our cases, which I'm struggling to find. And I, quite frankly, without trying to criticize an opinion which doesn't represent a holding of this court, just how language like the overarching question helps you at all. Frankly, how it helps anybody, because it lacks any indicia of refinement or specificity, which is what I understand you at least to be attempting to argue in concept. That's correct, Your Honor. It does lack any sort of specificity. This is an editorial, I suppose, but my colleagues can take it out on me later. One of the frustrations I've had in reading these cases and dealing with waiver over the years is we throw around terms like issue, argument, theory, reason, question. Are they all the same? I mean, what do you waive? Do you waive an issue? Do you waive an argument? Do you waive a theory? As I say, this is merely editorial, I realize, but maybe we need to attempt to refine a bit our language of waiver. My question, sort of following up right on that is, so if you were putting together the test or the multi-factor test or whatever it is, what it is would you put out there so that each side and the court would know whether an issue or argument has been preserved or not? Why don't you tell us what factors you would be looking for? Right, I would look at Marks, Rose, and Tracy and specifically state that it has to be, not just that the motion was, it has to be the same theory. And what does that mean, following up on what Judge Smith was saying? It means it has to be the same legal argument. Supported by facts. I mean, the court has to be put on notice and the opposing party has to be put on notice of what exactly is being argued and what facts then need to be induced during the testimony. I'm not quite sure how to define theory any more narrowly for the court. It sounds though like you're using theory as synonymous with argument. I'm sorry, excuse me? It sounds like you're using the term theory as synonymous with argument, and that may be correct for all I know. I think that's fair, Your Honor, to say that. If we look at Marks for example, where at the district court the defendant had argued that the search of his, he consented to the search of his suitcase, it was involuntary. That was what he argued. Then we get on appeal and he says, well, I consented, but they exceeded the scope of my consent. The court found that to be waived because that was not the argument, theory, issue that was raised. But if Mr. Joseph's test, if we broaden the concept, then the idea is, well look, any time he, because he raised the issue of the suitcase, the search of the suitcase in the district court, then every conceivable argument that you can make for challenging the search of the suitcase was necessarily raised. That makes waiver meaningless. That's too broad. It's got to be the same argument, Your Honor. It does have to be the same argument. And the district court was put on notice that it needed to address a certain aspect of the argument, and perhaps that the government may have wanted the opportunity to adduce facts with respect to that. That's exactly right, Your Honor. I mean, the district court, if we look at the district court's memorandum opinion, it's very clear what she was addressing. She was addressing the issue of the expertise of the officers to determine whether currency was counterfeit. That's exactly what she talks about in her opinion. She does mention the passport. Nowhere in her opinion does she mention the word intent. Nowhere. Because it's not mentioned in the defendant's brief. It's not mentioned during the argument. It's not mentioned across examination. It's not mentioned anywhere. So she wasn't put on notice that she had to address that issue. And I would like to point out that though the defendant likes to rely on Wright in this court, that was never cited either. I mean, so the court was never put on notice this idea of you have to find every element. That is not the law. First of all, that's not what Wright says. Second of all, it's contrary to what every single other circuit court to have decided this issue, to consider this issue, has decided. Seven other circuits have found that it's not necessary to find intent to be able to address a counterfeiting case. And yes, the government would have very much appreciated the opportunity to come back around and just close that dot. You know, connect the dots between what the bartenders saw, what the security guard saw, what they experienced, and telling that to the police officers. Actually, without the passport, the probable cause as to criminality is a little murky. You'd have to play up a little more that they're really relying totally on the bartenders say so. And they're relying on the bartender's experience, which does that satisfy probable cause as compared to when the officers look at the passport, that was to my mind somewhat necessary as to probable cause as to the fact that there was some criminality. Well, I think it's hard to say looking back because other issues weren't raised so it was focused on certain issues but we have to keep in mind that the officers, it's based on the totality of the officers were seeing and experiencing. Mr. Joseph denied knowing that the money was counterfeit. Maybe they just didn't believe him. What would you have done differently if the argument was phrased just as it is right now, what would you have done before the district court? I simply would have asked the question of the police officers, Officer Umbrall and Officer Morrison whether they asked the bartender and or the security guard about the defendant's behavior in the club. Which they then would have relayed, he passed two $100 bills in quick succession. When we started to scrutinize him, he ran out the door and I had to chase him down. Obvious evidence of intent. It would have been one or two more questions that I would have loved to have been able to ask but I didn't have that opportunity because there was no... You didn't know it was an issue? I didn't know it was an issue. At trial everybody testified and the issue of probable cause wasn't the issue. Again, that wasn't asked at trial. But we weren't put on notice of that and it's very convenient for Mr. Joseph to now say well there's an absence of evidence on a certain issue after the record is closed and we can no longer connect that dot as I said. So at the end of the day, this should be deemed to be waived. This is a clear case that fits within Mark's and fits with Rose and it fits with Tracy. Dupree can be distinguished because it's a very different case here. The test is whether he raised the same theory. He did not. It's waived. And it's unfair to say that the district court has erred when you didn't give her a chance to even decide the issue that you raised. She didn't get the chance to decide the issue that you raised. And then I guess Berrios is the more recent decided since Dupree where we said only preserve only those arguments which he specifically raised. But I think that's fair. I mean 12E, the rule, requires the defendant to frame the issues for the parties and for the court. That's not an undue burden for the defendant to have to do. It can't keep changing the argument along the way. I mean where does it end? At what point do we say enough is enough? And I think that he's changed his argument so many times. Enough. The facts are what they are. He waived this argument. But even if he hadn't waived it, the argument's wrong. As I said, on the merits. And it's factually wrong as well. I mean there probably could have been enough there for the officers to say that yes, he had some knowledge. I mean for example, he's talking about the counterfeit currency here saying it looked perfectly normal and real. No it didn't. Everybody who looked at it knew that it was counterfeit. So of course the defendant could have been put on notice himself that that money that he passed was counterfeit. Or at least the officers could have adduced that fact from the circumstances, Your Honor. So we request that the district court's judgment be affirmed. Thank you. Mr. Donohue? Judge Smith, I have a test for you and I have two misrepresentations made by counsel for the government. First of all, this money looks absolutely like real money. And the reason we know that is because the defense urged the jury in closing to compare the bills. Defense counsel put in a genuine $100 bill. Twice told the jury, feel these, look at these. Wanted the jury to realize how they don't look alike. The second point I need to correct has to do with whether the officers would have been able to testify to any knowledge of Mr. Joseph's mental state. The answer is definitively no. That appears at pages 82 and 110 of the appendix. At that location, Secret Service agent Taylor states that she was debriefed by the arresting officers, quote unquote, on what they felt their probable cause was. And then agent Taylor goes on to testify that it was only after she had been interrogating Mr. Joseph for a long period of time that she, quote, kind of got the feeling he knew. Moreover, she never confronted Mr. Joseph with any of his suspicious behavior inside the club, which also makes it clear the officers didn't tell her any such thing. So frankly, the record is indisputable that the officers did not know this information and Taylor's testimony places that fact beyond dispute. And Judge Smith, I'm going to venture out here and say that the Dupree has no precedential course. The opinions of Judge Fischer and Judge Cowan do not share any common rationale. What was important to Judge Fischer was that the district court's ruling had in fact encompassed the issue that the government raised on appeal. What was important to Judge Cowan was that the judge was relying on the same precedent in both courts. So the test remains what it was in Lockett and Rose. And the test is, as you stated, Your Honor, whether the judge was relying on substantially the same ground as he sought in the district court. So what does that mean? There is actually no magic phrase to come up with, whether it's argument, theory, or what have you. The breadth of that standard, substantial similarity, is appropriate because it accommodates the policy concerns, the factors, that is, that should be considered. And those factors are two. So what's the ground that you say you urged before the district court, and what's the ground that you're urging here? As Your Honor has stated fairly enough in your questions to Ms. Costello, it's that there was not probable cause. That's been our argument in both places. The ground that you're urging is no probable cause. It's just that. Yes. And you can say, you could now say there's no probable cause because the officers were drunk at the time. I'm saying that when you apply the substantial... And therefore, we're not perceiving things. That's right. We couldn't say that now, Your Honor. We absolutely couldn't. But you're saying lack of probable cause... Well, you've put forward a new fact. The officers were drunk. And we're not relying on any new fact. When we apply the substantial similarity test, the two key factors to consider are, was the issue raised well enough that the factual record is adequately developed? And was the issue raised well enough that the district court had opportunity to consider it? And you're saying that the issue of the mental state of Mr. Joseph was sufficiently raised to put the court on notice and was not from a factual matter different from the facts that needed to be adduced? I'm saying all the facts we need to answer that question are in the record as it happens in this case. That's the significance of Secret Service Agent Taylor's testimony. Her testimony cannot be read for any other proposition but that the arresting officers were not aware of Mr. Joseph's behavior inside the club. So we may be lucky in that regard, Your Honor. But when we consider the factors to be considered, one, was there adequate factual development? Two, did the district court have opportunity to consider? In this case, they favor entertainment of the merits. Given that those policy considerations are satisfied, we'd submit that the merits should be reached and the district court's opinion should be reversed. Thank you very much, Your Honor. Thank you. The case is well argued. We'll take it under advisement.